# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) Criminal Case No. 1:23cr00015-001 |
| v. | ) |
| | ) **REPORT AND** |
| **DIAMOND SNOW BOOHER,** | ) **RECOMMENDATION** |
| Defendant | ) |

### *I.    Background*

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the defendant's written consent, this case was referred to the Honorable Pamela Meade Sargent, United States Magistrate Judge, to conduct a plea hearing.

### *II. Facts*

The defendant has been charged in a one-count Information. On February 26, 2024, a plea hearing was conducted before the magistrate judge, and the defendant entered a plea of guilty to Count One of the Information, charging her with conspiracy to possess with intent to distribute and to distribute methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).

At this hearing, the defendant was placed under oath and testified that she is 30 years old and has a high school education. The defendant testified that she reads and writes the English language. The defendant testified that she has been diagnosed

–1–

with anxiety and depression, and she takes medication daily for these conditions. The defendant also admitted that she has had a long history of substance abuse, including abusing marijuana, methamphetamine, fentanyl and heroin at the time of her arrest. The defendant admitted that she has not used any of these substances since her arrest in early September 2023. The defendant testified that her anxiety and depression, and/or her mental health medications did not affect her ability to make decisions in her best interest or to understand the charge against her or the nature and consequences of the proceedings or her pleading guilty. She also testified that she was not under the influence of any drug, medication or alcoholic beverage at the time of the plea hearing.

The defendant stated that she was fully aware of her right to grand jury indictment, that she had discussed that right with her counsel and that she wished to waive her right to grand jury indictment and consent to allow the Government's case against her to proceed on the one-count Information filed with the court. The defendant stated that, other than the terms of the Plea Agreement filed in this matter, no one had made any other promises to her or in any way had attempted to force her into waiving her grand jury indictment right. The undersigned accepted the defendant's waiver of her grand jury indictment rights, finding that the defendant was doing so knowingly and voluntarily.

The defendant stated that she was fully aware of the nature of the charge against her and the consequences of pleading guilty to that charge. The defendant was advised in open court of the charge contained against her in the Information. She testified that she had fully discussed the charge, and her case in general, with

her counsel. She also testified that she had read the Plea Agreement in its entirety, and she had discussed the Plea Agreement with her counsel before signing the Agreement. She stated that she understood the terms of the Plea Agreement and that the document presented to the court set forth her agreement with the Government in its entirety. The defendant specifically testified that she understood that, under the terms of the Agreement, she was waiving any right to directly appeal or collaterally attack her conviction and sentence, insofar as she may legally do so.

The defendant stated that she was pleading guilty of her own free will because she was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises, other than those contained in the Plea Agreement with the Government, assurances or threats to her in an effort to induce her plea. The defendant testified that she understood that the offense with which she is charged is a felony and that, if her plea is accepted, she will be adjudged guilty of the offense and that this adjudication may deprive her of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess a firearm.

The defendant was informed of the possible maximum penalties provided by law for the offense with which she is charged. The defendant also was informed that the court was not bound by any recommendation that the Government might make regarding the sentence to be imposed, and, if the court did not impose the sentence recommended by the Government, it would not be a basis to withdraw her plea.

The defendant also was informed that, under the Sentencing Reform Act of

1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant testified that she and her counsel had discussed how the Sentencing Guidelines might apply in her case. The defendant also testified that she understood that the court would not be able to determine the guideline sentence for her case until after a presentence report has been completed, and both parties have an opportunity to challenge the reported facts and the application of the Guidelines. The defendant stated that she understood that, after the applicable guideline range was determined, that the district judge has the authority, in some circumstances, to depart from the Guidelines and impose a sentence that is more severe or less severe than the sentence called for by the Guidelines. She stated that she understood that the Sentencing Guidelines were no longer mandatory, and after considering the Guidelines and the factors listed under 18 U.S.C. § 3553(a), the district judge may sentence outside of the Guidelines and up to the statutory maximum sentence. She stated that she understood that the eventual sentence imposed may be different from any estimate her attorney, the U.S. Attorney's Office or the U.S. Probation Office has given her. Under the terms of the Plea Agreement, the defendant is agreeing that Sentencing Guideline 2D1.1(c)(4) is applicable to her conduct in this case for a base offense level of 32 for involvement of at least 1.5 kilograms but less than 5 kilograms of a methamphetamine mixture. The defendant stated that she knew parole had been abolished and that if she is sentenced to prison, she will not be released on parole and will serve her full term of imprisonment.

    The defendant also testified that she understood she had the right to a trial by a jury, in addition to the following rights, which would be waived or given up if her

guilty plea is accepted:

>   i.   The right to plead not guilty to any offense charged against her;
>   ii.  The right at trial to be presumed innocent and to force the Government to prove her guilt beyond a reasonable doubt;
>   iii. The right of assistance of counsel;
>   iv.  The right to see, hear and cross-examine witnesses;
>   v.   The right to call witnesses to testify in her own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
>   vi.  The right to decline to testify unless she voluntarily elected to do so in her own defense.

The defendant stated that she was fully satisfied with the advice and representation given to her in this case by her counsel. She stated that she had no complaints whatsoever regarding her attorney's representation. The defendant also testified that she understood the possible consequences of her plea and asked the court to accept her plea of guilty to Count One of the Information.

The Government presented the following evidence regarding the offense with which the defendant is charged:

> At times relevant to the Information, the defendant, Diamond Snow Booher, ("Booher"), in the Western District of Virginia and elsewhere, knowingly conspired with others to possess with intent to distribute and distribute methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.
> During the times relevant to the Information, Christopher David

Johnson, (a.k.a. "CJ") ("Johnson"), was incarcerated in the state of Georgia. Using one or more electronic devices (e.g., a cellular phone), Johnson operated a large-scale methamphetamine-distribution operation that extended from Georgia into the Western District of Virginia. Generally speaking, Johnson communicated and coordinated with other individuals who would travel from the Western District of Virginia (and elsewhere) to Georgia, where those individuals would meet with other individuals to collect kilogram quantities of methamphetamine. Those individuals would bring the methamphetamine back to the Western District of Virginia (and elsewhere) and would then further distribute the methamphetamine to subdistributors. Johnson collected payment for the methamphetamine via CashApp and other means. For a period of time during the conspiracy, Johnson was responsible for much of the methamphetamine in the Bristol, Virginia and Bristol, Tennessee area.

While Johnson was incarcerated in Georgia, Booher regularly communicated with Johnson regarding methamphetamine distribution, pricing, quantities, and deliveries, and regarding others involved in this conspiracy. Johnson and Booher communicated both by Facebook Messenger and text messages. On two occasions in the latter part of 2022, Booher traveled from the Western District of Virginia to Georgia with the intent to pick up methamphetamine and bring it back to the Western District of Virginia for redistribution. On the first trip, Booher traveled with Michael Paul "Mikey" Brown, ("Brown"), and Eric Dale Whisman, but the trio was not able to successfully collect the

methamphetamine. On the second trip, Booher traveled with Noah Bryan Horn, ("Horn"), and the two of them successfully obtained a large quantity of methamphetamine in the Atlanta area. Horn and Booher then brought the methamphetamine back to the Western District of Virginia for redistribution. Horn routinely traveled to Georgia to pick up large quantities of methamphetamine for redistribution in the Western District of Virginia. Horn traveled to Georgia with, among other people, Nicholas Courtney. Others who made trips to Georgia for the purposes of picking up methamphetamine in this conspiracy included Amber Leigh Phipps, Jeremy Wayne Maxfield, ("Maxfield"), Christopher Michael Sullivan, ("Sullivan"), Eric Dale Whisman, and Ashley Lynn Young. In addition, Kayla Cheyenne Winebarger, (a.k.a. Kayla Large), helped Brown distribute methamphetamine during the relevant time.

During the relevant time, Booher regularly purchased distribution quantities (up to 1/4 pound) of methamphetamine for redistribution. Booher purchased distribution quantities of methamphetamine from Horn, Sullivan, Maxfield and Joey Dean Webb. Booher paid Johnson for the methamphetamine using Cash App. Booher also purchased smaller quantities of methamphetamine from Kedrick Dingus and Tabitha Satterfield.

This is not all the Government's evidence, but it establishes the elements of the charge to which Booher is pleading guilty.

After the Government presented its summary of this evidence, the defendant

stated that she agreed the Government could present this evidence at trial. The defendant had no dispute with or objection to the Government's summary of its evidence, and she admitted that the facts presented were true and accurate.

## PROPOSED FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;
2. The defendant is aware of the nature of the charge and the consequences of her plea;
3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Information; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned recommends that this court accept the defendant's plea of guilty to Count One of the Information and adjudge her guilty of that offense.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:   This 26th day of February, 2024.

/s/   *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

–9–